UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| NATIVE AMERICAN COUNCIL OF TRIBES, BLAINE BRINGS PLENTY, and CLAYTON CREEK, </br></br>Plaintiffs,</br></br>vs.</br></br>DOUGLAS WEBER, Warden of the South Dakota State Penitentiary, and DENNIS KAEMINGK, Secretary of the Department of Corrections,</br></br>Defendants. | CIV. 09-4182-KES </br></br></br></br></br>REMEDIAL ORDER |

Plaintiffs, Native American Council of Tribes (NACT), Blaine Brings Plenty, and Clayton Creek, succeeded in a court trial against defendants, Douglas Weber and Dennis Kaemingk, showing that a complete ban of tobacco in Department of Correction (DOC) facilities violates the Religious Land Use and Institutionalized Persons Act (RLUIPA). *Native Am. Council of Tribes v. Weber*, ___ F. Supp. 2d ___, No. Civ. 09-4182, 2012 WL 4119652 (D.S.D. Sept. 19, 2012). Plaintiffs sought injunctive relief in order to use tobacco during their religious ceremonies that take place at penal institutions.[1] This court ordered the parties to meet and confer about the terms of a narrowly

---

[1] Defendants' policy banning all tobacco, including tobacco used in Native American ceremonies, in DOC facilities was the precursor to plaintiffs' suit.

tailored tobacco policy and if unable to agree, to submit separate proposals and objections to the court. The parties failed to agree on a specific proposal. Accordingly, the parties have submitted to the court their proposals and objections.

## I.     Legal Standard

The Prison Litigation Reform Act (PLRA) provides that "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a)(1). Specifically, "[t]he court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1). "Narrow tailoring requires a fit between the remedy's ends and the means chosen to accomplish those ends." *Brown v. Plata*, 131 S. Ct. 1910, 1939 (2011) (internal quotation omitted). "The scope of the remedy must be proportional to the scope of the violation . . . [and] must be determined with reference to the constitutional violations established by the specific plaintiffs before the court." *Id.* at 1940. Additionally, the court "must give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief."

*Id.* at 1929. With these principles in mind, the court will now set out plaintiffs' remedy.

## II.     Remedy

Before discussing the specific relief to which plaintiffs are entitled, it is useful to articulate the basic premise that guides this order: A complete ban of tobacco in South Dakota penal institutions is a substantial burden on the exercise of the Native American religion. Accordingly, inmates who participate in the Native American religion must be afforded the opportunity to use tobacco during certain religious ceremonies. Thus, all remedies should be implemented in a manner to fulfill this objective.

### 1.     Mixtures used during Native American ceremonies that include tobacco will not contain more than 1 percent tobacco by volume.

Plaintiffs' expert witness, Richard Bernard Moves Camp, testified that tobacco need only be in the mixture and that even a 1 percent amount is suitable. In light of defendants' expressed security concerns relating to the existence of tobacco within DOC facilities, the court concludes that a 1 percent limit is narrowly drawn, is not too intrusive, and corrects the violation. Plaintiffs have not proffered any rationale as to why a 10 percent amount is needed. Based on plaintiffs' own expert testimony, which established that only a 1 percent amount is necessary for religious exercise, a 10 percent amount would not be a narrowly drawn remedy.

3

Defendants also argue that the tobacco in the mixtures should be cherry-blend tobacco. Defendants have not offered any rationale as to why only cherry-blend tobacco should be allowed. Plaintiffs, however, argue that cherry-blend tobacco is not easily smoked because it damages the pipe used for smoking. Therefore, the court will not impose a restriction on the type of tobacco used in the mixtures.

2. **Tobacco ties and prayer flags can contain mixtures that include tobacco. All tobacco ties and prayer flags used during ceremonies must be burned at the conclusion of the ceremonies**.

Plaintiffs demonstrated at trial that tobacco ties and prayer flags which include tobacco play an important role in the exercise of their religion. Eliminating tobacco from tobacco ties and prayer flags, as proposed by defendants, undermines this court's previous determination that banning tobacco substantially burdens plaintiffs' right to exercise their religion. The requirement that the mixture used in the ties and flags contain only 1 percent tobacco, coupled with the requirement that the ties and flags be burned at the conclusion of the ceremonies, alleviates defendants' security concerns, making the remedy narrowly tailored and limited in its intrusiveness.

3. **The mixtures used for tobacco ties and prayer flags must be ground, but the mixtures that are smoked in pipes do not need to be ground.**

Defendants argue that grinding the mixtures reduces the possibility of the tobacco being separated from the rest of the mixture and subsequently

inserted into the "black market." Plaintiffs have no objections to grinding the tobacco mixture that is used for tobacco ties and prayer flags. Additionally, grinding the tobacco mixture that is used in tobacco ties and prayer flags is a "narrowly drawn" remedy that ensures the exercise of the Native American religion is free from a substantial burden. Thus, the mixtures used for tobacco ties and prayer flags must be ground.

Separately, plaintiffs argue that smoking the mixture after it is ground is difficult because smoking the ground mixture "is like breathing dust into one's lungs" and can cause the person to "get sick off of it." Docket 194 at ¶ 2; Docket 170 at 193. Defendants maintain their "separation" objection with regards to the mixture used for smoking. With respect to defendants' objection, decreasing the amount of tobacco present in the mixture to only 1 percent reduces the possibility of separation. Plaintiffs, on the other hand, introduced evidence at trial that showed smoking the ground mixture may lead to physical ailments. Because the 1 percent limit severely decreases the possibility of separation, plaintiffs' health concerns carry more weight here. Thus, the tobacco mixtures used for smoking does not need to be ground.

> 4. **The mixtures used during ceremonies will be provided by volunteers who are cleared by the DOC.[2] The volunteers must be eligible for and receive a "pink-tag" or some equivalent**

---

[2] The DOC can implement procedures for mandating and documenting the reimbursement of the volunteers by the inmates for those volunteers who seek reimbursement.

> **clearance level.[3] Volunteers who violate the tobacco policy may be refused admission to any DOC facility and may be subject to prosecution.**

Plaintiffs argue that requiring "pink-tag" certification, which requires several hours of training, "would, in effect, be equivalent to a ban on tobacco, because it would be virtually impossible to recruit any volunteer to comply with such a burdensome requirement," and thus, "orange-tag" volunteers should be allowed to provide the mixtures. Docket 194 at ¶ 4. But the evidence presented at trial contradicts plaintiffs' objection because the volunteer who previously provided the mixture, Mary Montoya, had received "pink-tag" certification. Plaintiffs' argument that finding a volunteer who is willing to receive "pink-tag" certification is "virtually impossible" carries no weight when, in fact, it was the standard operating procedure prior to the tobacco ban.

Moreover, volunteers with "orange-tag" certification require a constant escort from DOC staff. Defendants' staffing concerns regarding the allowance of "orange-tag" volunteers to bring in mixtures is persuasive because forcing the DOC to increase its staffing obligations increases DOC costs. An increase in costs is an adverse impact on the operation of DOC facilities to which the court

---

[3] "Pink-tags" are given to (1) individuals who enter an adult DOC institution more than once a month, have reviewed the DOC volunteer handbook, have completed the required information requested within the handbook, and have completed a minimum of thirty-two hours of core curriculum during pre-service training and a minimum of four hours of mandatory topics during annual in-service training; (2) staff members who have not completed "blue-tag" training; and (3) contract psychiatrists or other specialists. Docket 190-1 at 1-4.

must give substantial weight when fashioning a remedy. *Brown*, 131 S. Ct. at 1929. Thus, the court's remedy necessitating "pink-tag" volunteers is sufficient to remedy the violation without adversely impacting the DOC facilities.

> **5.   Mixtures provided by the approved volunteers must be brought into the facility in a sealed, clear plastic bag that is subject to search and marked for identification. Mixtures must be premixed to comply with the 1 percent tobacco by volume requirement.**
>
> **6.   Each DOC facility will determine where ceremonies take place within the facility, including the locations where tobacco ties and prayer flags are made. The DOC may require certain activities that involve tobacco to take place under video surveillance. The video surveillance requirement does not apply to the sweat lodge ceremony.**

Video surveillance is not a condition precedent to the happening of sweat lodge ceremonies because such ceremonies are conducted in the dark within the sweat lodge. Plaintiffs established at trial the significant role that the sweat lodge ceremony and the presence of tobacco involved in such ceremony plays in their religious exercise.

Defendants propose that tobacco should not be present inside the sweat lodge because DOC staff cannot supervise that area, implying that inmates will be able to separate the tobacco from the mixture and then insert the tobacco into the "black market." There are several facts that eliminate defendants' concerns. First, only a limited number of inmates can fit inside of a sweat lodge. Second, the environment inside of a sweat lodge is very dark, thus making it difficult for an inmate to successfully separate tobacco from other

ingredients in the mixtures. Third, the mixtures will only include 1 percent tobacco, also making separation difficult. Fourth, the non-smoking mixtures will be ground, making it difficult to separate the tobacco from the rest of the mixture. Fifth, inmates can be searched following the sweat lodge ceremony to guarantee that they are not attempting to smuggle tobacco into the "black market." Therefore, tobacco can be used during the sweat lodge ceremony even though the inside of the sweat lodge is not under video surveillance.

### 7. Inmates participating in the Native American religion can participate in the making of tobacco ties and prayer flags.

Defendants' propose that inmates should not be allowed to make tobacco ties or prayer flags because there are not enough staff members to properly supervise the inmates to ensure tobacco is not improperly removed from the mixtures. As noted above, removing all tobacco from tobacco ties and prayer flags was established at trial to be a substantial burden on plaintiffs' religious exercise. Thus, tobacco ties and prayer flags will continue to be made by inmates prior to ceremonies in which the ties and flags are used. The threat of inmates improperly removing tobacco during these events is minimized by requiring the tobacco in the mixture to be ground prior to the volunteer bringing it to the prison, by decreasing the percentage of tobacco in the mixture to 1 percent, and by implementing a video surveillance requirement. With these limitations, there is no reason to limit the number of participants as defendants propose.

8. **The process for handling and distributing tobacco ties and prayer flags will revert back to the procedures used prior to the tobacco ban.**

Plaintiffs' proposal asks for pipe carriers to be allowed to handle and distribute the tobacco ties and prayer flags prior to ceremonies. Neither party has shown how or why the old system for handling and distributing the tobacco ties and prayer flags was inadequate. Thus, the court concludes that the previous way of handling and distributing tobacco ties and prayer flags should be reinstated.

9. **An abuse of ceremonial tobacco by an inmate will result in a one-year suspension from any ceremony that includes tobacco.**

10. **Further Instructions:**

All other procedures and processes should revert back to the manner in which they were done prior to the tobacco ban and consistent with this order. As discussed at the beginning of this section, inmates who practice the Native American religion must be afforded the opportunity to use tobacco during certain religious ceremonies. Because the DOC previously permitted and implemented a system in which members of the Native American religion used tobacco during ceremonies, reimplementing such a system with the additional requirements discussed above is limited in its intrusiveness and still provides a narrowly tailored remedy to plaintiffs.

Additional proposals were submitted by plaintiffs and defendants that were not addressed above. Docket 190; 191. These additional proposals were

not specifically addressed in this order because they did not rely on any specific reasoning, legal or practical, as to why they should be implemented in addition to the rules set forth in this order. The court refuses to fashion its remedy based on conclusory proposals that lack any foundation in law or practicality. In addition, without any accompanying rationale the court cannot determine whether the proposals satisfy the requirements created by the PLRA. Thus, such proposals will not be implemented.

Accordingly, it is

ORDERED that defendants are enjoined from banning tobacco used during Native American religious ceremonies.

IT IS FURTHER ORDERED that defendants must amend their policies and procedures to comply with this order.

Dated January 25, 2013.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE